LPER CURIAM.*
This matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, John G. Baum, an attorney licensed to practice law in the State of Louisiana, but currently on interim suspension.[1] Prior to resolution of the charges, respondent filed a petition for consent discipline, and the ODC concurred in that petition.
UNDERLYING FACTS
These proceedings are based on three separate files investigated by the ODC. The facts, as stipulated to by respondent with the concurrence of the ODC, are as follows:

Mitchell Matter

In September 1998, Jacqueline Mitchell retained respondent for $500 to handle a real estate matter. While respondent accepted the funds, he failed to perform any services on behalf of his client. Subsequently, he refused to return the unearned fees to Ms. Mitchell.
|2On December 14, 1998, Ms. Mitchell filed a complaint with the ODC. Respondent failed to reply to the ODC’s requests for information forwarded to his attorney registration addresses.

*1094
Johnson/Smith Matters

In October 1998, Rhonda Johnson retained respondent for $260 to represent Ervin Brady in a parole revocation hearing. In July 1999, William Smith retained respondent for $300 to represent him in a criminal matter. Subsequently, respondent failed to perform any legal services on behalf of either of his clients, including failing to appear at Mr. Brady’s parole hearing and Mr. Smith’s court appearances. Mr. Smith retained other counsel to complete his criminal matter. Respondent failed to provide accountings or return the unearned fees to his clients.

Unauthorized Practice of Law

Respondent is also licensed to practice law in the State of Texas. For reasons which are not clear from the record, he became ineligible to practice in that state. While ineligible, he represented Elliot Jac-quet in Texas on a criminal matter.[2]
DISCIPLINARY PROCEEDINGS

Formal Charges

After investigation, the ODC filed three sets of formal charges against respondent.
In the Mitchell matter, the ODC alleged respondent violated the following provisions of the Rules of Professional Conduct: Rules 1.3 (lack of diligence), 1.4 (failure to communicate), 1.5 (failure to refund unearned-fees), 1.16 (failure to protect | ^client interests upon termination of representation), 8.1(c) (failure to cooperate with the ODC in its investigation), 8.4(a) (violating or attempting to violate the Rules of Professional Conduct) and 8.4(g) (failure to cooperate with the ODC).
In the Johnson/Smith matter, the ODC alleged respondent’s actions violated the following provisions of the Rules of Professional Conduct: Rules 1.3 (lack of diligence), 1.4 (failure to communicate), 1.5 (failure to refund unearned fees), 1.16 (failure to protect client interests upon termination of representation), 8.1(c) (failure to cooperate with the ODC in its investigation) and 8.4(g) (failure to cooperate with the ODC).
In the unauthorized practice of law matter, the ODC alleged respondent’s conduct violated Rule 5.5(a) (violating a disciplinary regulation of another jurisdiction through the unauthorized practice of law in that jurisdiction).

Formal Hearing

The hearing committee conducted a formal hearing on the charges in the Mitchell matter.[3] It found these charges were proven by clear and convincing evidence, and recommended that respondent be suspended from the practice of law for a period of six months subject to certain conditions to reinstatement.
Subsequently, respondent filed a motion to reopen the record to submit mitigating evidence concerning his alleged substance abuse and mental health problems.[4] However, the matter was continued because the parties entered into 14consent discipline negotiations. The hearing on the other *1095 matters was likewise continued in light of these negotiations.

Petition for Consent Discipline

Subsequently, respondent submitted a petition for consent discipline. In his petition, he stipulated to the misconduct charged in the Mitchell matter, the Johnson/Smith matter and the unauthorized practice of law matter. As a sanction, he proposed that he be suspended from the practice of law for eighteen months, with all but one year and one day deferred, subject to a one year supervised probation with conditions.[5]
The ODC -concurred in the petition. It found the proposed sanction appropriate, noting that under the proposal, respondent would have to seek reinstatement to engage in the practice of law.
| sRecommendation of the Disciplinary Board
Based on respondent’s stipulation of misconduct, the board limited its consideration to the appropriateness of the proposed sanction. The board found that respondent’s actions violated duties owed to his clients, the public, the legal system and the profession. It noted that respondent’s clients suffered serious actual injury through respondent’s neglect of their legal matters and deprivation of their funds. Through his unauthorized practice of law, his initial failure to cooperate in the investigation of the disciplinary matter and other acts of professional misconduct, respondent caused harm to the public, the legal system and the profession. As aggravating factors, the board recognized a pattern of misconduct, multiple offenses and substantial experience in the practice of law.[6] In mitigation, it recognized respondent’s personal problems.[7]
Relying on the ABA’s Standards for Imposing Lawyer Sanctions and jurisprudence from this court, the board determined imposition of a suspension to be appropriate and recommended that the proposed consent discipline be adopted.
DISCUSSION
Although this matter arises from a petition for consent discipline, Supreme *1096 Court Rule XIX, § 20(B) provides that the extent of discipline to be imposed is subject to review. In determining an appropriate sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved, considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
Respondent’s actions resulted in injury to his clients, the public, the legal system and the profession. His neglect of his clients’ legal matters and failure to communicate with them resulted in undue delays, jeopardized their cases and imposed additional burdens upon the legal system. Additionally, he has deprived his clients of their funds and has made no effort to provide restitution.
The baseline sanction for this misconduct is a suspension. However, a review of our jurisprudence indicates the range of suspensions imposed under similar facts is broad. See e.g., In re: Szuba, 01-1877 (La.10/5/01), 797 So.2d 41 (two-year suspension, subject to a one-year period of probation imposed on an attorney with a prior disciplinary record for neglecting three legal matters, failing to communicate with his clients and fading to return client property); In re: Holley, 01-1876 (La.10/5/01), 797 So.2d 46 (six-month suspension, with all but sixty days deferred, subject to a one year period of probation imposed on an attorney who neglected three legal matters, negligently failed to communicate with the clients and negligently failed to refund unearned fees, but provided restitution prior to the complaints being filed); In re: Boudreau, 00-3158 (La.1/5/01), 776 So.2d 428 (three-year suspension imposed on attorney who neglected three client’s matters, failed to communicate with the clients, failed to account for and return unearned fees, failed to repay student loan, withheld client property and failed to cooperate with ODC).
In determining the appropriate sanction under these facts, we recognize that much of the misconduct arose during a period when respondent was suffering personal |7and emotional problems, as well as substance abuse problems. While these problems do not excuse his misconduct, they serve to mitigate the sanction to be imposed.
Under these circumstances, we find the proposed discipline of an eighteen month suspension, with all but one year and one day deferred, followed by one year of supervised probation, is appropriate. Because this suspension is longer than one year, respondent will be mandated to apply for reinstatement under Supreme Court Rule XIX, § 24, giving this court an opportunity to determine whether respondent has remedied the problems which led to the misconduct. In addition, the probationary period will protect the public by allowing monitoring of respondent’s practice. Accordingly, we will accept the petition for consent discipline.
DECREE
Upon review of the findings and recommendation of the disciplinary board, and considering the record filed herein, it is ordered John G. Baum be suspended from the practice of law in Louisiana for a period of eighteen months, with all but one year and one day deferred. In the event respondent is reinstated to the practice of law, he will be subject to a one year period of probation with the conditions set forth in the petition for consent discipline. Any *1097 misconduct during the period of probation will be grounds for making the deferred portion of the suspension executory. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.

 Knoll, J., recused

. On January 5, 2001, this court granted a joint petition filed by respondent and the ODC to place respondent on interim suspension stemming from the misconduct which is the subject of the instant proceedings. In re: Baum, 00-3226 (La.1/5/01), 778 So.2d 1105.

. Respondent maintains that he was unaware of his ineligibility in Texas.

. At the time of the hearing, the charges in the Johnson/Smith matter and the unauthorized practice of law matter had not yet been filed. Accordingly, the hearing was limited the charges in the Mitchell matter.

. Specifically, respondent maintained he failed to cooperate with the ODC in its inves-ligation because he was suffering from occasional to frequent episodes of moderate to severe depression, making any sustained effort to work difficult and often impossible. Moreover, he contended that he was hospitalized a number of times for treatment of depression and alcoholism, which resulted in the loss of his legal practice.

.Respondent proposed the following conditions:
1. Respondent shall respond to all reasonable requests of his probation monitor.
2. Respondent must enter into a contract with the Lawyer’s Assistance Program during the time of probation. The contract will be the standard one with no special conditions requested by the ODC.
3. Respondent shall enroll and attend one full day of ethics school administered by the Louisiana State Bar Association's Practice Assistance and Improvement Committee.
4. Respondent agrees that any violation of any terms or conditions set forth shall result in a summary revocation of probation and the immediate imposition of the remaining period of suspension deferred.
5. Respondent's request for reinstatement must be accompanied by a report of a medical and psychological evaluation demonstrating that respondent is fit to resume the practice of law.
6.Respondent will either return unearned fees or voluntarily participate in the Louisiana State Bar Association Fee Dispute Resolution Program regarding fees charged for him in the cases involving the underlying complaints before the completion of his probation.

. Respondent was admitted to the practice of law in Louisiana in 1984, approximately fourteen years prior to his first misconduct subject of the instant proceedings.

. In connection with the petition for consent discipline, respondent submitted evidence that during the time periods in question, he had undergone hospitalization and personal problems. Additionally, he pointed out that after an initial reluctance, he fully cooperated with the ODC’s investigation and resolution of the matters, as well as closed his practice and entered into a voluntary interim suspension pending the outcome of the disciplinary matters.