ATTORNEY DISCIPLINARY PROCEEDINGS
PER CURIAM.
h This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Frederick A. Stolzle, Jr., an attorney licensed to practice law in Louisiana but currently on interim suspension based upon a joint petition filed by the parties filed in April 2009. In re: Stolzle, 09-0934 (La.4/29/09), 7 So.3d 660.
PRIOR DISCIPLINARY HISTORY
Before we address the current charges, we find it helpful to review respondent’s prior disciplinary history. Respondent was admitted to the practice of law in Louisiana in 1978. In December 1995, respondent was admonished for mishandling his client trust account by commingling personal funds with client funds. In May 2001, respondent was admonished for failing to pay the fees of an expert witness in a legal matter. In 2008, this court accepted a petition for consent discipline and suspended respondent from the practice of law for thirty days, fully deferred, for failing to timely pay a third-party medical provider. In re: Stolzle, 08-1023 (La.6/6/08), 987 So.2d 248.
Against this backdrop, we now turn to a consideration of the misconduct at issue in the present proceeding.
| ^UNDERLYING FACTS
The underlying facts of this matter are not in dispute, having been stipulated to by the parties.[1]
Count I — The Marijuana Possession Matter
In November 2008, respondent was arrested on charges of possession of marijuana and possession of a firearm with a controlled dangerous substance after a deputy constable from the Baton Rouge City Constable’s Office arrived at his place of residence to execute an order of eviction. Although the criminal charges were ultimately dropped, respondent admits that he was intentionally in possession of twelve grams of marijuana at the time of his arrest and that the marijuana was intended for his own personal use.
The ODC alleged respondent’s conduct violated Rule 8.4(b) (commission of a criminal act that reflects adversely on the lawyer’s honesty, trustworthiness, or fitness as a lawyer) of the Rules of Professional Conduct.
Count II — The Cuddihy Matter
Geraldine Cuddihy retained respondent to represent her in a personal injury matter arising out of an automobile accident. Ms. Cuddihy’s claim settled in July 2004 and the settlement proceeds were disbursed. Because Ms. Cuddihy was still receiving medical treatment at the time, respondent held $5,000 in previously paid medical payments coverage in his trust account while he attempted to negotiate a *803 reduction of the subrogation claim with Ms. Cuddihy’s insurer. Thereafter, Ms. Cuddihy fired respondent and obtained new counsel. Although the insurer ultimately waived its subrogation claim, respondent did not immediately refund the | .¡proceeds to Ms. Cuddihy, despite her repeated demands. Respondent admits that he knowingly converted these client funds to his own use. In March 2013, respondent made full restitution to Ms. Cuddihy.
The ODC alleged respondent’s conduct violated Rules 1.15(a) (safekeeping property of clients or third persons) and 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation) of the Rules of Professional Conduct.
Count III — The Pinkney Matter
In 2008, Kaisha Pinkney hired respondent to represent her in a personal injury matter. Respondent failed to diligently pursue the claim and allowed the claim to prescribe. Respondent also failed to communicate with Ms. Pinkney concerning the status of her case, including the fact that the claim had prescribed.
The ODC alleged respondent’s conduct violated Rules 1.2 (scope of the representation), 1.8 (failure to act with reasonable diligence and promptness in representing a client), and 1.4 (failure to communicate with a client) of the Rules of Professional Conduct.
Count IV — The Rogers Matter
William Rogers hired respondent to represent him in a personal injury matter. Respondent failed to diligently pursue the claim and allowed the claim to prescribe. Respondent also failed to communicate with Mr. Rogers concerning the status of his case, including the fact that the claim had prescribed.[2]
The ODC alleged respondent’s conduct violated Rules 1.2,1.3, and 1.4 of the Rules of Professional Conduct.
^DISCIPLINARY PROCEEDINGS
In December 2011, the ODC filed four counts of formal charges against respondent, as set forth above. Respondent answered the formal charges and generally admitted the factual allegations set forth therein.
In April 2012, respondent and the ODC entered into a joint stipulation of facts and rule violations. In this document, respondent stipulated to the facts as alleged by the ODC and admitted that he violated the Rules of Professional Conduct as charged. The parties stipulated that respondent acted intentionally in Count I and knowingly in Counts II, III, and IV. The parties stipulated to the following aggravating factors: a prior disciplinary record, multiple offenses, vulnerability of the victim, and substantial experience in the practice of law (admitted 1978). The parties stipulated to the following mitigating factors: a cooperative attitude toward the disciplinary proceedings and remorse.

Hearing Committee Report

The hearing committee conducted a hearing which was limited to the issue of mitigation. After considering the evidence and testimony presented at the hearing, the hearing committee accepted the joint stipulation of facts and rule violations filed by the parties and made the following additional factual findings:
At the hearing, Respondent did not deny the charges, although he offered several explanations as to why the conduct occurred. Prior to November 21, 2008, Mr. Stolzle testified he suffered debili *804 tating back injuries that caused significant pain, and subsequently resulted in his having great difficulty walking. His physical situation impacted his ability to focus, and thus, his earning capacity, which led him to the temptation to take his client’s funds. His use of marijuana and failure to act with due diligence and to communicate with his clients was also the result of his physical difficulties, according to Mr. Stolzle.
IsThe committee determined that respondent violated duties owed to his client, the public, the legal system, and the legal profession. He acted intentionally and with total disregard for his obligations to his clients and his profession. While having great empathy for respondent and the issues regarding his health, the committee did not excuse his conduct insofar as his duty to his clients was concerned. Also, as a Louisiana licensed attorney, respondent knew the possession of marijuana was a violation of the law that he was sworn to uphold.
The committee did not refer to the aggravating factors found in the ABA’s Standards for Imposing Lawyer Sanctions, but instead recognized the following “significant aggravating circumstances”: deliberate violation of the laws of the State of Louisiana, conversion of client funds, failure to act with diligence, and failure to reasonably communicate with clients. In mitigation, the committee recognized respondent’s “health condition and his cooperation with ODC.”[3]
After further considering the court’s pri- or jurisprudence involving similar misconduct and the aggravating circumstances of this case, the committee recommended that respondent be disbarred.
The ODC filed a limited objection to the hearing committee’s report, asserting that it was unclear whether the committee gave full effect to the joint stipulation of facts and rule violations. Respondent argued that the sanction of disbarment recommended by the committee was too harsh.

Disciplinary Board Recommendation

After review, the disciplinary board determined that the hearing committee’s factual findings do not appear to be manifestly erroneous, as they are supported by uncontroverted testimony and the joint stipulation of facts and rule violations. | fiHowever, the board disagreed with the committee’s conclusion that respondent’s conduct was intentional in all counts since the parties previously stipulated that his conduct was intentional only in Count I and knowing in the remaining counts.
The board determined that respondent violated duties owed to his client, the public, the legal system, and the legal profession. Respondent’s conduct was knowing in part and intentional in part, and he caused actual harm to Ms. Cuddihy by depriving her of $5,000 for a lengthy period of time. Citing the ABA’s Standards for Imposing Lawyer Sanctions, the board determined that the applicable baseline sanction in this matter is disbarment.
In addition to the factors stipulated to by the parties, the board found the following aggravating factors are present: a dishonest or selfish motive and illegal conduct, including that involving the use of controlled substances. The board adopted the following mitigating factors: physical disability and a cooperative attitude toward the proceedings.
In determining an appropriate sanction, the board cited Louisiana State Bar Ass’n *805 v. Hinrichs, 486 So.2d 116 (La.1986), which sets forth general guidelines for evaluating disciplinary cases involving conversion and commingling of funds entrusted to a lawyer. The board also cited In re: Denhollem, 03-0935 (La.6/6/03), 849 So.2d 488, in which the court disbarred an attorney who endorsed seven checks payable to his law firm on behalf of its clients and converted the funds totaling $17,135.97 to his own use. When confronted by one of the firm’s partners, Denhollem made full restitution to the clients whose funds were converted. In imposing disbarment, the court found that Denhollem had acted in bad faith and caused actual damage to the clients and to the law firm. The court also considered several aggravating factors, including a dishonest or selfish motive, a pattern of misconduct, multiple offenses, and substantial experience in the practice of law.
7Considering Hinrichs and Denhollem, and the aggravating factors present, the board determined that the sanction recommended by the committee is appropriate. Accordingly, the board recommended respondent be disbarred. The board also recommended that respondent be assessed with the costs and expenses of this proceeding.[4]
Respondent filed an objection to the disciplinary board’s recommendation. Accordingly, the case was docketed for oral argument pursuant to Supreme Court Rule XIX, § 11(G)(1)(b).
DISCUSSION
Bar disciplinary matters fall within the original jurisdiction of this court. La. Const. art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Banks, 09-1212 (La.10/2/09), 18 So.3d 57. While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee’s factual findings. See In re: Caulfield, 96-1401 (La.11/25/96), 683 So.2d 714; In re: Pardue, 93-2865 (La.3/11/94), 633 So.2d 150.
The record of this matter supports the stipulated facts. Based on the parties’ stipulations and the other evidence in the record, respondent has neglected legal matters, failed to communicate with his clients, converted client funds, and failed to properly terminate the representation of his clients. He also committed a criminal offense by possessing marijuana. Based on this misconduct, respondent has violated Rules 1.2, 1.3, 1.4, 1.15(a), 8.4(b), and 8.4(c) of the Rules of Professional Conduct, as stipulated to by the parties.
 IsHaving found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent’s actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
*806 Respondent knowingly and intentionally violated duties owed to his client, the public, the legal system, and the legal profession. His misconduct caused actual harm. The baseline sanction for this type of misconduct is disbarment. The record supports the aggravating and mitigating factors as stipulated to by the parties. In addition, the mitigating factors of personal and emotional problems and physical disability are also present.
In Louisiana State Bar Ass’n v. Hinrichs, 486 So.2d 116 (La.1986), we set forth guidelines for imposing discipline in a conversion case:
In a typical case of disbarment for violation of DR 9-102 [now Rule 1.15], one or more of the following elements are usually present: the lawyer acts in bad faith and intends a result inconsistent with his client’s interest; the lawyer commits forgery or other fraudulent acts in connection with the violation; the magnitude or the duration of the deprivation is extensive; the magnitude of the damage or risk of damage, expense and inconvenience caused the client is great; the lawyer either fails to make full restitution or does so tardily after extended pressure of disciplinary or legal proceedings.
A three year suspension from practice typically results in cases involving similar but less aggravated factors. In such cases the lawyer is guilty of at least a high degree of negligence in causing his client’s funds to be withdrawn or retained in violation of the disciplinary rule. He usually does not commit other fraudulent acts in connection therewith. The attorney usually benefits from |flthe infraction but, in contrast with disbarment cases, the client may not be greatly harmed or exposed to great risk of harm. The attorney fully reimburses or pays his client the funds due without the necessity of extensive disciplinary or legal proceedings.
A suspension from practice of eighteen months or two years will typically result where the facts are appropriate for a three-year suspension, except that there are significant mitigating circumstances; or where the facts are appropriate for a one-year suspension, except that there are significant aggravating circumstances.
A suspension from practice of one year or less will typically result where the negligence in withdrawing or retaining client funds is not gross or of a high degree. No other fraudulent acts are committed in connection with the violation of the disciplinary rule. There is no serious harm or threat of harm to the client. Full restitution is made promptly, usually before any legal proceeding or disciplinary complaint is made.
Applying the criteria in Hinrichs to the instant matter, we note that Ms. Cuddihy was harmed for an extended period of time due to respondent’s failure to refund the $5,000 he received on her behalf in 2004. Although the record shows that respondent eventually made full restitution to Ms. Cuddihy, he did not do so until 2013, shortly after this matter was argued to the disciplinary board. This lengthy delay caused Ms. Cuddihy great expense and inconvenience. Based on these facts and considering that there are substantial aggravating circumstances present, a sanction on the higher end of the Hinrichs range is warranted.
Accordingly, we will adopt the disciplinary board’s recommendation and disbar respondent, retroactive to the date of his interim suspension.
DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the *807 record, briefs, and oral argument, it is ordered that Frederick A. Stolzle, Jr., Louisiana Bar Roll number 12497, be and he hereby is disbarred, retroactive to April 29, 2009, the date of his interim 110suspension. His name shall be stricken from the roll of attorneys and his license to practice law in the State of Louisiana shall be revoked. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10. 1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.
JOHNSON, Chief Justice, dissents and would suspend three years.
WEIMER, Justice, dissents and assigns reasons.

. See In re: Tony, 10-0837 (La. 10/19/10), 48 So.3d 1038, in which we held that "[i]n a disciplinary proceeding, the parties are free to enter into ... stipulations, and effect must be given to them unless they are withdrawn."

. The formal charges allege similar misconduct by respondent in connection with a second personal injury case he handled for Mr. Rogers, but that portion of the formal charges is no longer at issue.

. In its conclusion, the committee added that respondent "has no history of prior violations." However, respondent has stipulated to, and the record supports, three instances of prior discipline, as previously noted.

. The board also recommended that respondent be required to pay restitution to Ms. Cuddihy. However, as previously noted, respondent paid full restitution in that matter in March 2013.